DON HARDY dba HARDY CONSTRUCTION COMPANY,
Plaintiff

v.

MARTIN ANDERSON dba PAGO PLAZA, Defendant

High Court of American Samoa
Trial Division

CA No. 8-88

December 6, 1988

Before REES, Associate Justice, AFUOLA, Associate Judge, and LUALEMAGA, Associate Judge.

Counsel: For Plaintiff, John Ward
 For Defendant, William Reardon

Opinion and Order:

Plaintiff contracted to build a roof for a small structure housing a generator belonging to defendant. The contract price was $5495.00, about half the amount of the next lowest bid received by defendant.

The contract specified that all lumber should be "pressure treated." It is clear that both parties understood this term to be a material element in the contract: the evidence establishes a universal practice in the local construction industry to use only lumber that is pressure treated, since no other lumber lasts very long when exposed to weather conditions in American Samoa. It was also proved at trial (1) that there is a

80

well recognized industry standard defining pressure treatment; (2) that plaintiff knew of this standard; (3) that plaintiff used wood that did not meet the industry standard; and (4) that plaintiff used this wood knowing it did not meet the industry standard.

Exactly what lumber the plaintiff did use is less clear. The preponderance of the evidence, however, is to the effect that plaintiff purchased some untreated wood that had become available after being fraudulently or mistakenly imported by another contractor. Although this lumber was thinly coated with a substance similar to that used for pressure treatment, it fell far short of the industry standard and was rejected by its intended recipient. The untreated lumber was then consigned to Lumana'i Development Corporation, which advertised it for sale at a discount. It was specifically advertised as untreated lumber. The manager of Lumana'i testified that plaintiff purchased a quantity of this untreated lumber at about the time he was beginning work on defendant's roof.

The roof was more or less completed by March of 1987. Defendant's architect inspected it and reported to defendant on April 1, 1987, a list of nineteen ways in which the architect believed the work did not comply with the specifications. One item on the list was that "[i]t appears that untreated lumber was used rather than pressure treated as specified." (We infer that this was because the lumber, which had not then been thoroughly painted, did not bear the surface markings that indicate it had been pressure treated. Tests later performed on the wood confirmed that it had not been pressure treated to the industry standard. The results were more consistent with surface brushing or spraying of a chemical formula, such as had been done to the lumber plaintiff purchased from Lumana'i.)

Plaintiff attempted to correct most of his errors, and on July 1, 1987, the architect reported that no further corrections should be required if (1) the welds affixing certain plates to steel columns were cleaned, primed, and repainted, and (2) "the receipts for the treated lumber [were] received."

81

Later in July plaintiff sent defendant a bill for the contract price. He also sent copies of invoices evidencing his earlier purchase from a company in the United States of pressure treated lumber in an amount sufficient to have built the roof. One of these invoices was shown at trial to have been altered after plaintiff received it and before it was sent to defendant. The effect of the alteration (changing an invoice date from "8/25/86" to "11/25/86") was to make it seem more likely that the lumber had been used on defendant's roof rather than on some other job. When confronted at trial with proof of this alteration, plaintiff at first testified that he did not know who had done it. Later he testified that his wife (who keeps the books for the construction company) had done it, probably in order to get defendant to pay for the roof.

Defendant did not respond to plaintiff's demand. In September plaintiff's attorney wrote to demand payment of the contract price. The attorney then called defendant's manager, who alluded to a need for proof that the lumber used on the roof was pressure treated. Defendant's manager promised to send a letter detailing this concern. After receiving another letter from the attorney, defendant's manager wrote on October 22, 1987, that "[a]s far as we are concerned, Don Hardy of Hardy Construction has still not supplied us with proof that the lumber used on the generator shed roof was pressure treated." He also alluded to some items that had been stolen from the premises during the time plaintiff had been doing the work.

On December 17, 1987, plaintiff's attorney sent defendant's manager a copy of letters from the company from which plaintiff had purchased pressure treated lumber during 1986 and 1987. The letters confirmed that the lumber purchased by plaintiff on those occasions had indeed been pressure treated. It did not, of course, establish that the pressure treated lumber in question had been used on defendant's roof.

Sometime during the latter part of 1987 plaintiff also approached the manager of Lumana'i Development Corporation to ask whether the lumber he had bought from Lumana'i had been pressure treated and whether he could get a certificate indicating that it was treated. The manager told

him it had not been pressure treated and that he could not provide a certificate saying it was.

At trial plaintiff continued to maintain that he had used only the pressure treated lumber purchased from the United States, not the untreated lumber from Lumana'i, on defendant's roof. This assertion is inconsistent with the inspecting architect's report that the lumber did not look like pressure treated lumber; with the test results showing that five randomly bored samples of the wood were not pressure treated; with the alteration by plaintiff or his wife/bookkeeper of the date on one of the invoices for the pressure treated wood plaintiff did purchase; with plaintiff's presentation of the altered invoice to defendant (and later to the Court) as evidence that he had used pressure treated wood on the roof; and with plaintiff's unsuccessful attempt to procure a certificate of pressure treatment for the untreated Lumana'i wood.

Had plaintiff simply admitted that he had used nonconforming materials, the Court would have been faced with the question whether the lack of conformity was so serious as to bar not only recovery on the contract but also a quantum meruit recovery for the benefit conferred on plaintiff. The roof appears to be suitable for its intended purpose except that it will not last nearly as long as a roof built with pressure treated wood. Especially in light of the far higher bids by other contractors (who probably calculated their bids based on the cost of doing the job right) the evidence would point to the conclusion that defendant has received at least a $3000 roof.

An equitable remedy such as quantum meruit, however, cannot be claimed by a plaintiff with unclean hands. The circumstances of this case would certainly sustain an indictment for forgery. A business entity is chargeable with the acts and intentions of the agents --- in this case either plaintiff himself or his wife --- who conducted the transaction on which it bases its claim. <u>See</u> <u>Development Bank v. Ilalio</u>, 5 A.S.R.2d 110, 124 (1987).

A contracting party who materially and fraudulently alters a writing which the law prescribes either as sufficient or as necessary evidence of the contract --- that is, a writing

which would either constitute an "integrated agreement" for the purpose of the parol evidence rule or which would satisfy the Statute of Frauds with relation to the contract --- automatically loses whatever rights he had under the contract. See Restatement (Second) of Contracts § 286 (1981). This is true even if he has conferred a benefit on the other party. See id., Comment a. In this case the alteration was not of the contract document itself but of a collateral document that was crucial to plaintiff's attempt to recover under the contract. The principle --- that a party who has not fulfilled his obligations under a contract, and who might be tempted to tamper with the evidence so as to prevent a court from discerning this, should be afforded a powerful disincentive --- is the same.[2]

The forgery in this case, and plaintiff's proffer of the forged document as evidence to support his claim, seem to fall just outside the rule under which any recovery would be absolutely barred; but they surely must inform the Court's discretion to grant or withhold an equitable remedy.

Defendant seeks not only the denial of any recovery to plaintiff but also an award of exemplary and punitive damages, attorney fees, and costs. The contract does authorize an award of attorney fees. The benefit already conferred on defendant, however, a free roof not conforming to the specifications of the contract but serviceable for the foreseeable future, more than compensates it for the expenses of this proceeding. The complaint and the counterclaim are therefore dismissed.

It is so ordered.

---

[2] Cf. Deuteronomy 27:14, 17 ("And the Levites shall declare to all the men of Israel in a loud voice: . . . . 'Cursed be he who removes his neighbor's landmark.' And all the people shall say, 'Amen.'")